Marta **VELEZ–ECHEVARRIA**, Plaintiff,

v.

.Marimer **OLAZAGASTI,**
et al., Defendants.

Civil No. 94–1029 (DRD).

United States District Court,
D. Puerto Rico.

March 27, 1998.

---

Fernando L. Gallardo, Woods & Woods, Hato Rey, PR, for plaintiff.

Eliezer Aldarondo–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, Mayra Maldonado–Colon, Dept. of Justice, Fed. Lit. Div., San Juan, PR, Luis A. Plaza–Mariota, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiff filed the instant Section 1983 action claiming political discrimination and deprivation of her property right interest in continued employment without the benefit of a pretermination hearing, in violation of the First and Fourteenth Amendments of the United States Constitution. Pending before the court are Defendants' motions for summary judgment, (Docket Nos. 34 and 40), in which they argue that Plaintiff's position was one of "trust" for which compatible political affiliation constitutes a legitimate qualification. For the reasons stated below, the court grants said motions, dismissing Plaintiff's claims.

## I. Background

On August 1, 1990, during the administration headed by former Gov. Rafael Hernández–Colón of the Popular Democratic Party, the then President and General Manager of "Compañía de Fomento Recreativo" ("CFR") appointed Plaintiff to the position of "trust" of Assistant Manager for Administration. See P.R. Laws Ann., tit.3 §§ 1301–1431. She did not compete with other candidates in order to attain this position. A CFR Classification Plan, that had become effective on January 1, 1987, specifically provides the classification criteria for the position of Assistant Manager for Administration, Class Number 2701. The plan states:

An upper management and executive level job of extraordinary administrative responsibility and technical complexity that consists of acting as one of the principal assistants to the President and General Manager of the CFR in different areas directly related to the CFR's operation, that requires broad knowledge of different disciplines. The occupant of the position is responsible for the planning, coordination, direction, supervision and evaluation of all activities developed in a functional working area, which nature, control scope, organization, size and volume of operations are of significant variety and considerable complexity. Actively participates in the formulation and implementation of public policy related to its working area and directly intervenes, substantially collaborates and effectively counsels the General Manager in all subjects related to the working area under his/her responsibility.

The occupant of the position exercises extraordinary freedom of action and own criteria in the discharge of his/her duties and the counseling offered is of high technical and managerial level. The work performance is evaluated through the counseling offered, the analysis of the reports that he/she submits to the President and General Manager and through meetings held to determine the concordance of his/her performance with the duties and public policy assigned to the CFR and provided by the Board of Directors and the President and General Manager.

During deposition, Plaintiff admitted that the above quoted criteria was in full force prior to and during her time in the position. (Plaintiff's Depo. at 20.)

Pursuant to Puerto Rico law, the government's Central Personnel Administration Office had also provided a job description (Form OP–16) for the position of Assistant Manager for Administration, Position Number 004. See P.R. Laws Ann., tit.3 §§ 1301–1431. The job description states:

The incumbent in this position is responsible for the performance of the following duties:

1. He/she is the President and General Manger's first collaborator in matters related with general direction, planning and development, auxiliary services and financial administration.

2. Counsels the President and General Manager in all matters related to the CFR's procedures and organization.

3. Actively participates with the President and General Manager in the formulation of policy that relates to his/her working area.

4. Represents the President and General Manager in government meetings and of other nature through the latter's express delegation.

5. Collaborates with the President and General Manager in the analysis of the operational and administrative problems that affect the CFR.

6. Formulates programs and working plans to attend to and to channel the activities under his/her direction.

7. Develops and follows up on short and long term plans to accomplish the programs and projects assigned to his/her working area.

8. Fulfills other related tasks that may be assigned to him/her.

On January 2, 1992, the candidate for the New Progressive Party ("NPP"), Dr. Pedro Rosselló, was sworn in as governor. In early January 1993, Gov. Rosselló appointed Co-defendant Olazagasti as the CFR's new President and General Manager. By letter dated January 12, 1993, Co-defendant notified Plaintiff of her dismissal from the position of Assistant Manager for Administration. Shortly thereafter, Co-defendant appointed a member of the NPP to Plaintiff's former position.

## II. Summary Judgment Standard

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodríguez v. Puerto Rico Telephone Co.*, 110 F.3d 174, 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case", *Vega–Rodríguez*, 110 F.3d at 178, and "genuine" "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry*, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion. Moreover, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996) (citations omitted).

## III. Discussion

For summary judgment purposes, Defendants assume, *arguendo*, that Plaintiff's dismissal was in fact for political purposes. Yet, they argue that Plaintiff was not entitled to the protection which the First and Fourteenth Amendments offer and that, therefore, Plaintiff's dismissal did not amount to prohibited conduct. The court agrees.

### A. First Amendment Claim

Following the Supreme Court opinions of *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v.*

*Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Court of Appeals for the First Circuit has established the standard for trial courts to follow in determining political discrimination cases such as the one at hand.

■ In order to succeed at the summary judgment stage, a defendant must show that the plaintiff "held a 'political' position for which party affiliation constituted an appropriate qualification for continued employment ... to ensure that 'representative government not be undercut by tactics obstructing the implementation of policies of the new administration.'" *Ortiz–Piñero v. Rivera–Arroyo,* 84 F.3d 7, 12 (1st Cir.1996). *See also Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241 (1st Cir.1986) (stating that "representative government needs a certain amount of leeway for partisan selection of agents in order to work"). The court must base the determination on the substance of the duties inherent in the position, not on mere labels such as "position of 'trust.'" *Id.* Hence, the court must employ a two-part inquiry under the *Branti/Elrod* analysis:

> First, we inquire whether the overall functions of the employee's department or agency involve "decision making on issues where there is room for political disagreement on goals or their implementation." Second, we decide whether the particular responsibilities of the plaintiff's position, within the department or agency, resemble those of "a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement" for continued tenure. Among the indicia material to the second element are " 'relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders.' "

*Ortiz–Piñero,* 84 F.3d at 12 (quoting *Jiménez Fuentes,* 807 F.2d at 241–42) (other citations omitted). Even though fact-intensive, the *Branti/Elrod* analysis presents a question of law and the court must "make a

common sense judgment in light of the purpose to be served." *Id.* (quoting *Jiménez–Fuentes,* 807 F.2d at 242).

### 1. The CFR and "Partisan Political Interest"

■ The CFR is charged with the following objectives:

1. To develop physical facilities to provide the inhabitants of Puerto Rico with the means for their recreation and relaxation.

2. To plan, design, build, operate, maintain and conserve recreational and sports installations and facilities.

....

4. To devote its resources to the development of any activity or enterprise which directly or indirectly promotes the means for recreation and relaxation of the people.

P.R. Laws Ann., tit. 15 § 503.

Just as in *Ortiz–Piñero,* where the government agency was charged with marshaling the finances of various public works projects, the CFR is also a government agency with overall functions that clearly involve "decision making on issues where there is room for political disagreement on goals or their implementation." *See Ortiz–Piñero,* 84 F.3d at 12–13 (citation omitted). *See also O'Connor v. Steeves,* 994 F.2d 905, 910 (1st Cir. 1993) (holding that the government agency's responsibility for developing and implementing public works programs met this test); *Juarbe–Angueira v. Arias,* 831 F.2d 11, 15 (1st Cir.1987) (holding that the "[w]here, how and when the government will repair or reconstruct public buildings" was of political interest); *Jiménez–Fuentes,* 807 F.2d at 242 *(holding that the government agency's objective—to improve the living conditions of all low and middle income families—was of a political nature).* Accordingly, the court concludes that Defendants meet the first prong of the test under Ortiz–Piñero.

### 2. The Duties Inherent in the Position

Under the second prong, the court must examine any evidence that may show that "the particular responsibilities of the plaintiff's position, within the [agency], resemble those of a 'policymaker, privy to confidential

information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement' for continued tenure." *Ortiz–Piñero,* 84 F.3d at 13 (quoting *O'Connor,* 994 F.2d at 910). It is well settled that, in making this determination, written job descriptions (Form OP–16) provide highly probative evidence. *Id. See also Romero Feliciano v. Torres Gaztambide,* 836 F.2d 1, 3 (1st Cir.1987) (stating that the First Circuit has considered Form OP–16 as dispositive in Puerto Rico political discrimination cases); *Méndez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1260 (1st Cir.1987) (stating that the courts will rely upon the governmental entity's written job description, when determining the duties inherent in a particular position). Further, "[t]he relevant inquiry is to the function of the public office in question and not the actual past duties of the particular employee involved." *Jiménez Fuentes,* 807 F.2d at 242, also quoted in *Méndez–Palou,* 813 F.2d at 1258 and *Ortiz–Piñero,* 84 F.3d at 17.

Thus, the court relies upon the above quoted classification criteria, as well as upon the job description (Form OP–16), for Plaintiff's position. As in *Méndez–Palou,* these official documents clearly establish that the CFR's Assistant Manager for Administration is deeply involved in policymaking, confidential and communicative tasks at a very high level. The position's duties include: being the President and General Manager's first collaborator in matters related with general direction, planning and development, auxiliary services and financial administration; participating with the President and General Manager in the formulation of policy; representing the President and General Manager; collaborating with the President and General Manager

in the analysis of the CFR's operational and administrative problems. *See infra* p. 3, duties 1, 3, 4 and 5 in job description (OP–16). The court notes that the list of duties in *Méndez–Palou* is not as politically heavy as the one in the instant case.[1] Yet, even though said list seemed to stress politically neutral administrative functions, the appellate court still stated that the position was "a critical top level position involving wide-ranging responsibility to counsel, represent, and serve the President." *Méndez–Palou,* 813 F.2d at 1261.

Moreover, the evidence shows that Plaintiff did not have to compete in order to attain the position. *See Ortiz–Piñero,* 84 F.3d at 14 (considering lack of competition as probative indicia that a position is political). "Furthermore, we fail to see how one could possibly measure the performance of the person occupying this position by strictly technical or professional criteria." *Méndez–Palou,* 813 F.2d at 1261.

The described combination of factors leads the court to the clear conclusion that Plaintiff held a political position for which party affiliation constituted an appropriate qualification for continued employment and, therefore, that Plaintiff is not entitled to the First Amendment protection.

### B. Due Process Claim

Plaintiff raised essentially the same arguments as support for her due process claim—that she had a legitimate expectation of continued employment under Puerto Rico law, giving rise to a property right that entitled her to a pretermination hearing. The question whether a government employee possessed a property right—a legitimate expectation of continued employment—is controlled by state law. *Ortiz–Piñero,* 84

---

1. The job description (Form OP–16) for the Environmental Quality Board's Director of Administration listed the following:

   1. Participates as counselor of the President in all matters related to the administrative mechanism of the Agency, particularly in the formulation and establishment of public policy pertaining to the administrative area, pursuant to the statute that creates the Environmental Quality Board.

   2. Is responsible for planning, coordinating and directing all administrative functions that develop through the Personnel Division and the General Services Division of the Environmental Quality Board.

   3. Prepares lectures, bulletins, memorandums, responses and consultations related to whatever administrative activities the President, on his own initiative, may assign him.

   4. Represents the President in activities and/or meetings, as delegated by him.

   5. Performs other related tasks that the President may entrust to him.
*Méndez–Palou,* 813 F.2d at 1260–61.

F.3d 7, 17 (1st Cir.1996). Plaintiff's appointment designates the position as one of "trust" (or "confidential position"), pursuant to P.R. Laws Ann., tit. 3 § 1351. A "confidential position" is subject to "free selection and removal." P.R. Laws Ann., tit. 3 § 1350. Therefore, Plaintiff did not have a property right to continued employment as CFR's Assistant Manager for Administration and Defendants were not under any constitutional obligation to afford her a pretermination hearing. *See Ortiz–Piñero,* 84 F.3d at 17–18. *See also Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1173 (1st Cir.1988) (holding that even "career" employees who had not attained their positions through the procedure provided by law did not have a property right in continued employment).

## IV. Conclusion

For the reasons stated above, assuming that Plaintiff's dismissal was based on her political affiliation, the court finds that Plaintiff's dismissal was not in violation of her First Amendment right, since political affiliation is an adequate requirement for the position of CFR's Assistant Manager of Administration. The dismissal did not violate Plaintiff's Fourteenth Amendment right either, since the nature of her position did not warrant a pretermination hearing prior to dismissal. Therefore, the court grants Defendants' motions for summary judgment, dismissing Plaintiff's claims.

Since only state law claims remain and the court cannot maintain supplemental jurisdiction over them absent a federal cause, the court dismisses the entire case. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 728, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Rodríguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995).

Wherefore, the federal claims are dismissed with prejudice; the local law claims are dismissed without prejudice.

IT IS SO ORDERED.

### *JUDGMENT*

In accordance with the opinion and order issued on this same date, the court hereby enters judgment for Defendants, dismissing the federal claims with prejudice and the local claims without prejudice.

IT IS SO ORDERED.